**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------X
MYERS INDUSTRIES, INC.,             :
                                    :
and                                 :
                                    :
BUCKHORN, INC.,                     :
                                    :
                Plaintiffs,         :
                                    :    No. 14 Civ. 7051 (JFK)
    -against-                       :
                                    :       **MEMORANDUM**
                                    :       **OPINION & ORDER**
SCHOELLER ARCA SYSTEMS, INC.,       :
                                    :
and                                 :
                                    :
SCHOELLER ARCA SYSTEMS              :
SERVICES, B.V. F/K/A SCHOELLER      :
ARCA SYSTEMS, N.V.,                 :
                                    :
                Defendants.         :
----------------------------------X
<u>APPEARANCES</u>
FOR PLAINTIFFS MYERS INDUSTRIES, INC. AND BUCKHORN, INC.
      Judy L. Woods, Esq.
      Daniel M. Meier, Esq.
      BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

FOR DEFENDANTS SCHOELLER ARCA SYSTEMS, INC. AND SCHOELLER ARCA
SYSTEMS SERVICES, B.V. F/K/A SCHOELLER ARCA SYSTEMS, N.V.:
      John A. Basinger, Esq.
      Matthew G. Allison, Esq.
      Kyle R. Olson, Esq.
      BAKER & McKENZIE LLP

**JOHN F. KEENAN, United States District Judge:**

        Before this Court is Defendants Schoeller Arca Systems,

Inc. ("SAS") and Schoeller Arca Systems Services, B.V. f/k/a

Schoeller Arca Systems, N.V.'s ("SAS BV") motion to dismiss

Plaintiffs Myers Industries, Inc. ("Myers") and Buckhorn, Inc.'s

1

("Buckhorn") First Amended Complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

This action concerns two contracts between the Plaintiffs and the Defendants:  an asset purchase agreement and a patent license agreement.  Under these agreements, the Defendants purported to license a patent to the Plaintiffs.  The Plaintiffs later sued nonparties to this action, Orbis Corporation and Orbis Material Handling, Inc. (collectively, "Orbis"), for infringing this patent in the Southern District of Ohio.

During the course of that litigation, the Plaintiffs discovered that Orbis held a superior claim to the patent, which SAS failed to disclose to Myers.  Orbis successfully moved for the infringement action to be dismissed and the Southern District of Ohio subsequently awarded Orbis its attorney's fees. The action before this Court seeks recovery of the lost value of the agreements between Myers and SAS and a determination of which parties—Myers and Buckhorn on the one hand, or SAS and SAS BV on the other—should bear the cost of Orbis's attorney's fees in the Ohio Action as well as Myers and Buckhorn's costs, expenses, and attorney's fees associated with the Ohio Action.

The Plaintiffs' FAC asserts six causes of action against the Defendants:  (1) fraudulent inducement; (2) breach of the patent license agreement; (3) breach of the asset purchase agreement; (4) breach of SAS BV's guaranty; (5) unjust

enrichment; and (6) declaratory judgment against SAS and SAS BV. (<u>See</u> FAC ¶¶ 50-95.)

    This case is complicated by the existence of full-scale litigation in the Southern District of Ohio, which included multiple appeals to the Federal Circuit.  The gravamen of the Plaintiffs' injury as alleged in the FAC was resolved by the Federal Circuit shortly after the Defendants' motion to dismiss was fully briefed before this Court. <u>See</u> <u>Buckhorn Inc. v. Orbis Corp.</u>, 618 F. App'x 1000 (Fed. Cir. 2015).[1]  That decision did not moot this action entirely, however.  The Court considers this motion to dismiss in light of the Plaintiffs' remaining injuries as alleged.  For the following reasons, Defendants' motion is granted in part and denied in part.

## I.  Background[2]

    SAS is a Delaware corporation with its principal place of business in Goodyear, Arizona, that engages principally in the development and manufacture of plastic packaging. (FAC ¶¶ 19,

---

[1]  Inexplicably, neither party informed the Court of the Federal Circuit's opinion.  The Court reminds counsel of their obligation to conduct themselves with candor before the tribunal. <u>See generally</u> N.Y. RULES OF PROF'L CONDUCT 3.3 (2015).

[2]  The following facts are drawn from the FAC and the documents attached thereto. <u>See</u> <u>Staehr v. Hartford Fin. Servs. Grp., Inc.</u>, 547 F.3d 406, 425 (2d Cir. 2008).  The FAC omits certain specific dates of referenced related judicial opinions of which this Court takes judicial notice simply to establish the fact of such litigation and related filings. <u>See</u> <u>id.</u>

21.)  SAS owned U.S. Patent No. 5,199,592 (the "'592 Patent").[3]
(Id. ¶ 20.)

On about March 7, 2007, Myers, an Ohio corporation with its
principal place of business in Akron, Ohio, entered into an
asset purchase agreement with SAS. (Id. ¶¶ 17, 26.)  Under this
agreement, SAS agreed to convey certain assets and to license
certain patents, including the '592 Patent, to Myers. (Id.)  The
asset purchase agreement contained a jurisdiction clause
limiting the parties to bringing suits arising in connection
with the agreement in only the Southern District of New York or
New York state courts in New York county. (Id. Ex. B § 10.11.)
It also contained a choice-of-law clause in favor of New York
law. (Id. Ex. C § 10.8.)

SAS licensed the '592 Patent to Myers in a separate patent
license agreement executed on about March 8, 2007. (Id. ¶¶ 2,
31.)  The patent license agreement granted a fully paid-up,
royalty-free, nontransferable, co-exclusive license for the '592
Patent to Myers.[4] (Id. ¶ 31.)  The patent license agreement
contained a jurisdiction clause and choice-of-law clause

---

[3]  The '592 Patent expired on April 6, 2010. (FAC ¶ 20; id. Ex. C
sch. A.)

[4]  The license was co-exclusive between SAS and Myers because SAS
retained the right to sell certain licensed products to its own
customers. (Id. ¶ 33.)

identical to the asset purchase agreement. (<u>Id.</u> Ex. C §§ 7.11-.12.)

SAS made certain representations and warranties as part of the patent license agreement.  Under section 5.01, SAS represented and warranted that its execution, delivery, and performance of the patent license agreement would not violate, conflict with, or constitute a default under any of its other contractual obligations. (<u>Id.</u> ¶ 36; <u>id.</u> Ex. C § 5.01(iii).) Under section 5.02, SAS represented and warranted that it was the owner of the entire right, title, and interest in the '592 Patent and that it had the right and power to grant the licenses granted in the patent license agreement. (<u>Id.</u> ¶ 35; <u>id.</u> Ex. C § 5.02(i)-(ii).)

SAS made similar representations and warranties as part of the asset purchase agreement.  Under section 3.2, SAS represented and warranted that it had full authority to enter into the asset purchase agreement and the patent license agreement and that these agreements would be the legal, valid, and binding obligations of SAS, which would be enforceable against SAS according to their terms. (<u>Id.</u> ¶ 68; <u>id.</u> Ex. B § 3.2(a)-(b).)  Under section 7.1, SAS represented and warranted that the certificates and papers delivered to Myers were true and correct in all material respects on the date of the asset

5

purchase agreement and on the closing date. (<u>Id.</u> ¶ 69; <u>id.</u> Ex. B § 7.1.)

Under each agreement, SAS also agreed to indemnify Myers. Section 5.03 of the patent license agreement states that SAS's obligations to indemnify Myers "for a breach of representations and warranties in Section 5.02 shall be made in accordance with Section 9.1 of the Asset Purchase Agreement and shall be subject to the limitations set forth therein." (<u>Id.</u> Ex. C. § 5.03.) Section 9.1 of the asset purchase agreement states that SAS "shall" hold Myers

> harmless and indemnify [it] from and against . . . any and all Indemnified Losses incurred or to be incurred by [it] to the extent resulting from or arising from:
>
> (a)  The breach of any representation or warranty of [SAS] made or incurred under or pursuant to this Agreement or any document delivered pursuant hereto;
>
> (b) The breach of any agreement or covenant of [SAS] made or incurred under or pursuant to this Agreement or any document delivered pursuant thereto; and
>
> (c) Any Excluded Liability.

(<u>Id.</u> Ex. B § 9.1.)  The asset purchase agreement defines "Indemnified Losses" somewhat circularly as "Losses (including reasonable attorneys' fees and expenses) for which a party is entitled to be indemnified pursuant to Article IX hereof." (<u>Id.</u> Ex. B art. I, at 4.)  In turn, the asset purchase agreement

6

defines "Losses" as "indirect or direct claims, losses, damages,
Liabilities, expenses or costs." (Id.)  SAS BV, a Netherlands
business entity with a principal place of business in Zwolle,
Netherlands, and SAS's designated parent company under the asset
purchase agreement, unconditionally, irrevocably, and absolutely
guaranteed SAS's indemnity of Myers under the asset purchase
agreement. (Id. ¶¶ 22, 29-30; id. Ex. B pmbl., § 10.13.)

SAS authorized Myers to assign the patent license agreement
to Buckhorn, a wholly owned subsidiary of Myers and an Ohio
corporation with its principal place of business in Milford,
Ohio. (Id. ¶¶ 18, 38.)  As an assignee, Buckhorn could assert
the '592 Patent in an infringement action. (Id. ¶ 38)

The patent license agreement details an agreed-upon process
for bringing a patent infringement action against third parties.
SAS has the first right to bring an infringement action. (Id.
Ex. C § 3.02.)  If SAS exercises this right, Buckhorn can
participate at its own expense, but SAS has the right to control
the conduct of the litigation. (Id.)  If SAS does not exercise
this right, Buckhorn may bring the action. (Id.)  In that case,
SAS may participate at its own expense, but Buckhorn has the
right to control the conduct of the litigation. (Id.)  If either
party chooses not to participate, but its participation is later
"require[d]" by the party who brought suit, the party who
brought suit shall pay the "costs and expenses" associated with

7

the other party's required cooperation including any attorney's fees. (Id. Ex. C § 3.03.)

On December 12, 2008, Buckhorn filed a patent infringement suit against nonparties to this action, Orbis, in the U.S. District Court for the Southern District of Ohio asserting infringement of the '592 Patent (the "Ohio Action").[5] (Id. ¶ 39.) On September 18, 2009, Buckhorn amended its complaint in the Ohio Action to add SAS as a co-plaintiff. (Id. ¶ 40; id. Ex. C §§ 3.02-.03.)[6]

During the course of the Ohio Action, on May 28, 2010, Orbis produced a copy of a license agreement that predates the SAS-Myers patent license agreement (the "Orbis License"). (Id. ¶ 41.)  SAS never disclosed this earlier license agreement to Myers. (Id. ¶¶ 42-43.)

On November 22, 2011, the Southern District of Ohio ruled that the Orbis License was valid and that it predated the SAS-Myers patent license agreement. (Id. ¶ 44.)  Therefore, Orbis was the licensee of the '592 Patent through its expiration.

---

[5]  The Ohio Action is styled Buckhorn Inc. v. Orbis Corp., No. 3:08-cv-459 (S.D. Ohio). (See FAC ¶ 7; Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 3 [hereinafter "Opp'n"].)

[6]  While it is not necessarily required for the Plaintiffs to state a claim at this juncture, the FAC does not expressly allege whether SAS's participation was voluntary or "required." (See FAC ¶ 40.)

(Id.)  On February 21, 2012, the Southern District of Ohio dismissed the action against Orbis. (Id. ¶ 45); Buckhorn Inc., 2012 WL 555397, at *1 (S.D. Ohio Feb. 21, 2012).  Orbis sought to recover attorney's fees through a provision in the Orbis License.  The Southern District of Ohio did not initially award Orbis these attorney's fees. (FAC ¶ 46.)

Orbis appealed this determination, and in two separate opinions dated April 22, 2014, and July 11, 2014, on remand from the Federal Circuit, the Southern District of Ohio awarded Orbis attorney's fees in an amount exceeding $3 million plus postjudgment interest and costs. (Id. ¶¶ 46-47); Buckhorn Inc., 2014 WL 3456993, at *3 (July 11, 2014), rev'd in part, 618 F. App'x 1000 (Fed. Cir. 2015).  The Southern District of Ohio expressly declined to allocate the obligation for payment of the attorney's fees between the parties to this action. See Buckhorn Inc., 2013 WL 6858768, at *2 n.3 (S.D. Ohio Dec. 30, 2013), rev'd in part, 618 F. App'x 1000.

On August 29, 2014, Myers and Buckhorn filed the action before this Court asserting six causes of action: (1) fraudulent inducement; (2) breach of the patent license agreement; (3) breach of the asset purchase agreement; (4) breach of SAS BV's guaranty; (5) unjust enrichment; and (6) declaratory judgment against SAS and SAS BV. (See id. ¶¶ 50-95.)

9

On February 9, 2015, the Defendants moved to dismiss the FAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The parties completed briefing in May 2015.

On July 2, 2015, while the Defendants' motion to dismiss was pending before this Court, the Federal Circuit reversed the Southern District of Ohio in part, concluding that the Plaintiffs were not parties to the Orbis License and, therefore, not liable to Orbis for attorney's fees under the Orbis License and, also, that the Plaintiffs were not directly liable to Orbis for attorney's fees under the patent license agreement. See Buckhorn Inc., 618 F. App'x at 1006-07.  The Federal Circuit declined, however, to express an opinion on whether the Plaintiffs were liable to SAS under the patent license agreement for payment of Orbis's judgment of attorney's fees against SAS. Id. at 1007.

## II.  Analysis

### A.  Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000.  Venue is appropriate under 28 U.S.C. § 1391(b)(3) because the parties have agreed to litigate in the federal or state courts of New York and agreed that venue is proper in the Southern District of New York. (See FAC ¶ 25; id. Ex. B § 10.11; id. Ex. C § 7.12.)

## B.  Legal Standard

A motion to dismiss should be denied so long as the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Segarra v. Fed. Reserve Bank of N.Y., 802 F.3d 409, 411 (2d Cir. 2015).[7]

Rule 12(b)(6)'s plausibility standard applies equally to motions to dismiss based on a statute of limitations defense. See Schenker AG v. Société Air France, 102 F. Supp. 3d 418, 422 (E.D.N.Y. 2015).  Even so, the statute of limitations is an affirmative defense, and the defendant bears the burden of

---

[7]  In addition to Rule 12(b)(6)'s facial plausibility standard, the Plaintiffs' fraudulent inducement claim is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  Because this cause of action is time-barred as pleaded, however, the Court need not consider whether the Plaintiffs met this heightened pleading standard.

proving it applies. FED. R. CIV. P. 8(c); Ellington Long Term
Fund, Ltd. v. Goldman, Sachs & Co., No. 09 Civ. 9802 (RJS), 2010
WL 1838730, at *2 (S.D.N.Y May 4, 2010).  Therefore, "the
survival of a [complaint in the face of a] Rule 12(b)(6) motion
to dismiss on statute of limitations grounds requires only
allegations consistent with a [facially plausible] claim that
would not be time-barred." Harris v. City of N.Y., 186 F.3d 243,
251 (2d Cir. 1999).[8]

### C.  Discussion

A federal court sitting in diversity in New York applies
the choice-of-law rules of New York. Thea v. Kleinhandler, 807
F.3d 492, 497 (2d Cir. 2015).  New York law honors the parties'
choice of New York substantive law in their choice-of-law
clauses, but does not consider the election of New York law to
include an election of New York's statutes of limitations unless
the parties explicitly indicate such a choice. See Portfolio
Recovery Assocs. v. King, 14 N.Y.3d 410, 416 (2010).

Where, as here, a nonresident plaintiff suffers an injury
outside of the state, New York's choice-of-law rules require a

---

[8]  Although Harris was decided prior to the Supreme Court's
retirement of the no-set-of-facts pleading standard, its holding
with regards to motions to dismiss based on statute of
limitations grounds remains good law, so long as the claim
stated in the complaint meets Iqbal and Twombly's plausibility
standard. See Ellington, 2010 WL 1838730, at *2.

court to apply the shorter limitations period, including all
relevant tolling provisions, between New York and the state
where the cause of action accrued.  N.Y. C.P.L.R. § 202; see
Thea, 807 F.3d at 497; Stuart v. Am. Cyanamid Co., 158 F.3d 622,
627 (2d Cir. 1998).  A claim accrues under New York law at the
time and the place of injury.  Glob. Fin. Corp. v. Triarc Corp.,
93 N.Y.2d 525, 529 (1999).  Where the "injury is purely
economic, the place of injury usually is where the plaintiff
resides and sustains the economic impact of the loss." Id.  The
Plaintiffs, who are both Ohio corporations with their principal
places of business in Ohio, allege economic injury and, thus,
sustained their injury in Ohio, where their claims accrued.  The
Defendants assert that each of the Plaintiffs' fraudulent
inducement, breach of contract, unjust enrichment, and
declaratory judgment causes of action is barred by the statute
of limitations.  As explained below, the Court applies New York
substantive law and the shorter applicable statute of
limitations as between Ohio and New York for each cause of
action.[9]

---

[9]  The parties do not contend that any state's statutes of
limitations periods apply to the Plaintiffs' claims other than
New York's. See Defs.' Mem. of Law in Support of Mot. to Dismiss
4 n.2 [hereinafter "Mem."]. See generally Opp'n.

### 1.  Fraudulent Inducement

The Plaintiffs bring both fraudulent inducement and breach of contract claims. (See FAC ¶¶ 50-72.)  The Defendants seek dismissal of the fraudulent inducement claim as duplicative of the breach of contract claims and as untimely. (Defs.' Mem. of Law in Support of Mot. to Dismiss 4-9 [hereinafter "Mem."].) Because this Court finds that the fraudulent inducement claim is untimely, it need not consider whether the fraudulent inducement claim should also be considered duplicative of the breach of contract claims.

In New York, a plaintiff alleging fraud must bring an action either six years from the date that the cause of action accrued or two years from when the plaintiff discovered (or with reasonable diligence could have discovered) the fraud. N.Y. C.P.L.R. § 213(8).  Ohio's statute of limitations governing fraud, by contrast, requires a plaintiff to bring an action within four years from the date that the fraud is or reasonably should be discovered. OHIO REV. CODE § 2305.09(C); Cundall v. U.S. Bank, 909 N.E.2d 1244, 1249 (Ohio 2009).

The Plaintiffs allege two separate injuries caused by the Defendants' fraud:  (1) direct liability for Orbis's attorney's fees and (2) the value of the patent license agreement. (FAC ¶¶ 6, 48-49.)

14

The Federal Circuit's July 2, 2015 opinion addressed and mooted[10] the Plaintiffs' first alleged injury. See Buckhorn Inc., 618 F. App'x at 1007 (reversing the district court's ruling that Myers and Buckhorn are directly liable to Orbis for attorney's fees).

Drawing all reasonable inferences in favor of the Plaintiffs, the injury involving loss of the value of the contract could be truthfully alleged as of March 8, 2007, when the parties executed the patent license agreement. See Carbon Capital Mgmt., LLC v. Am. Express Co., 88 A.D.3d 933, 939 (2d Dep't 2011) (holding that a party seeking recovery of contract price under a fraudulent inducement theory suffered injury on the date the parties entered the contract).  Accordingly, under New York's limitations period running from accrual, the last date for the Plaintiffs to timely allege their fraud claim passed on March 8, 2013.

Similarly, the Plaintiffs could with reasonable diligence have discovered the fraud no later than November 22, 2011, when the Southern District of Ohio ruled that the Orbis License was valid and predated the patent license agreement. (See FAC

---

[10]  "A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998).

¶ 44.)[11]  Under New York's limitations period running from discovery, the last date for the Plaintiffs to timely allege their fraud claim passed on November 22, 2013.  Under Ohio's limitations period, that statute of limitations did not run until November 22, 2015.

Because New York's statute of limitations is shorter here, it governs.  The statute of limitations governing the Plaintiffs' fraudulent inducement claim ran on November 22, 2013, and, therefore, the claim is untimely and is dismissed.

### 2.  Breach of the Patent License Agreement and the Asset Purchase Agreement

The Plaintiffs allege that the Defendants breached both the patent license agreement and the asset purchase agreement. (Id. ¶¶ 58-72.)  In each of these causes of action, the Plaintiffs assert that SAS breached the representations and warranties in the agreement. (Id. ¶¶ 62, 70.)

---

[11]  Both New York and Ohio law would likely consider the Plaintiffs to have discovered the fraud earlier (for example, when Orbis first produced the Orbis License on May 28, 2010) because both states' law requires only that the plaintiff possess knowledge of the facts from which the fraud could be reasonably inferred. See Sargiss v. Magarelli, 12 N.Y.3d 527, 532 (2009); Cundall, 909 N.E.2d at 1250.  For the purposes of this motion to dismiss, however, the Court draws the reasonable inference in favor of the Plaintiffs that, prior to the Southern District of Ohio's decision, a jury could determine the Plaintiffs' prior knowledge was only "mere suspicion." Sargiss, 12 N.Y.3d at 532.

New York law provides for a six-year statute of limitations for causes of action upon a contractual obligation or liability. N.Y. C.P.L.R. § 213(2).  When a plaintiff seeks to recover for breach of a contract's representations and warranties, that action can only be brought within six years of the date of the contract execution. See ACE Sec. Corp. v. DB Structured Prods., Inc., 25 N.Y.3d 581, 596 (2015); Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc., 810 F.3d 861, 865 (2d Cir. 2015).

Ohio's statute of limitations for written contracts is eight years. OHIO REV. CODE § 2305.06.  A breach of contract cause of action does not accrue "until the complaining party suffers actual damages as a result of the alleged breach." Kincaid v. Erie Ins. Co., 944 N.E.2d 207, 210 (Ohio 2010).[12]

The parties executed the contracts at issue here on March 7 and 8, 2007.  Therefore, the Plaintiffs' claim that the Defendants breached the representations and warranties of the asset purchase agreement expired on March 7, 2013, and their same claim pertaining to the patent license agreement expired on March 8, 2013.  Under Ohio law, the earliest date that the

---

[12]  Ohio reduced its statute of limitations on claims arising from written contracts from fifteen years to eight years effective September 28, 2012. See 2012 Ohio Laws 135.  For causes of action that accrued prior to that date, the period of limitations ends fifteen years from the date of accrual or September 28, 2020, whichever occurs first. Id.

statute of limitations could run given the dates that the
parties executed the contracts is September 28, 2020.

New York's shorter statutory limitations period governs
here.  Since the Plaintiffs first filed this lawsuit on August
29, 2014, their breach of contract claims are too late and are
dismissed.

### 3.  No Equitable Estoppel or Tolling Doctrines Apply to the Plaintiffs' Fraudulent Inducement or Breach of Contract Claims

The Plaintiffs implicitly concede that their claims for
fraudulent inducement and breach of contract are time-barred in
their opposition brief and argue instead that either the
Defendants should be equitably estopped from raising the statute
of limitations as a defense or the continuing wrong or
continuous representation doctrines toll the statute of
limitations period. (Opp'n 17-21.)

The Defendants reply that equitable estoppel is
inapplicable because the Plaintiffs failed to adequately plead
the subsequent misrepresentations that they claim to have relied
on in delaying the commencement of suit and, even if they had
done so, the Plaintiffs' timely knowledge of the facts
underlying the alleged misrepresentations precludes application
of equitable estoppel. (Defs.' Reply Mem. of Law in Support of
Mot. to Dismiss 7-8.)  The Defendants also contest the
applicability of the continuing wrong doctrine because the

18

Plaintiffs assert simply the ongoing effects of one contractual breach. (Id. at 9.)

Because the Plaintiffs' fraudulent inducement and breach of contract causes of action would be timely under Ohio law, the Court considers only the application of equitable estoppel, the continuing wrong doctrine, and the continuous representation doctrine under New York law.  For the reasons explained below, neither equitable estoppel nor either tolling doctrine applies here.

### a. Equitable Estoppel Does Not Apply Because the Plaintiffs Allege Only That the Defendants Failed to Disclose the Wrongs Committed

Where, as here, the Defendants have shown that the FAC is facially inconsistent with timely fraudulent inducement and contractual claims, they are generally entitled to dismissal of those claims as time-barred.  Under the doctrine of equitable estoppel, however, New York law will deny a defendant the benefit of a statute of limitations defense where the defendant's affirmative wrongdoing produced the long delay between the accrual of the cause of action and the institution of the legal proceeding. Putter v. N. Shore Univ. Hosp., 7 N.Y.3d 548, 552 (2006).  The plaintiff must assert additional acts beyond the original injurious one and "may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the

19

former tort." <u>Ross v. Louise Wise Servs., Inc.</u>, 8 N.Y.3d 478, 491 (2007).

The Plaintiffs allege only one additional act in the FAC—that the Defendants failed to disclose the Orbis License. (<u>See</u> FAC ¶ 43.)  Where, as here, "the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, [New York courts] have held that the defendants were not estopped from pleading a statute of limitations defense." <u>Corsello v. Verizon N.Y., Inc.</u>, 18 N.Y.3d 777, 789 (2012).

Solely in their opposition brief, the Plaintiffs assert that, in the Ohio Action, "SAS maintained that the [Orbis License] had been breached, had not been properly transferred to Orbis, was no longer valid, or did not include the '592 Patent." (Opp'n 19.)  While the Court would ordinarily decline to consider these new allegations raised for the first time in an opposition brief, it must consider these potential claims to determine whether these causes of action should be dismissed with prejudice (because amendment would be futile) or without prejudice with leave to amend.  <u>See</u> <u>Fisk v. Letterman</u>, 424 F. Supp. 2d 670, 676 (S.D.N.Y.) (Francis, Mag. J.), <u>adopted by</u> 424 F. Supp. 2d 670 (S.D.N.Y. 2006).

Even if Plaintiffs pleaded these allegations in the FAC, they would be insufficient to meet the Plaintiffs' burden of

establishing that equitable estoppel should apply here.  These
additional misrepresentations, which must have been made prior
to the Southern District of Ohio's November 22, 2011 decision,
ceased to be operational within the original limitations period.
After that November 22, 2011 decision, more than 15 months
remained before termination of the statutory limitations period
for contractual breaches, which ran in March 2013, and the full
two-year discovery period remained for fraud.  In New York,
"[t]he doctrine of equitable estoppel will not apply if the
plaintiff possesses 'timely knowledge' sufficient to place him
or her under a duty to make inquiry and ascertain all the
relevant facts prior to the expiration of the applicable Statute
of Limitations." Harris v. Wilmorite Corp., 266 A.D.2d 902, 902
(4th Dep't 1999) (quoting McIvor v. Di Benedetto, 121 A.D.2d
519, 520 (2d Dep't 1986))); see also Simcuski v. Saeli, 44
N.Y.2d 442, 449-50 (1978). Thus, even if the Plaintiffs were
lulled into inactivity until November 2011, their possession of
timely knowledge of the alleged breaches makes the doctrine of
equitable estoppel inapplicable here.

**b.  The Continuing Wrong Doctrine Does Not Toll the Limitations
Period Because the Plaintiffs Fail to Allege That the Defendants
Committed Any Ongoing Wrongs**

The continuing wrong doctrine "is usually employed where
there is a series of continuous wrongs and serves to toll the
running of a period of limitations to the date of the commission

21

of the last wrongful act." Selkirk v. State, 249 A.D.2d 818, 819 (3d Dep't 1998).  Thus, "it may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct." Id.

The Plaintiffs' claims of fraudulent inducement and breach of contract accrued on the dates of execution, March 7 and 8, 2007.  The Plaintiffs fail to allege that the Defendants committed any subsequent unlawful act.  While the Plaintiffs may have continued to feel the loss of the value of the patent license agreement over time, their failure to allege that the Defendants committed any additional wrongs precludes application of the continuing wrong doctrine.  See Pike v. N.Y. Life Ins. Co., 72 A.D.3d 1043, 1048 (2d Dep't 2010) (rejecting the application of the continuing wrong doctrine where the plaintiffs alleged they were induced to purchase unsuitable insurance policies but could not point to a specific wrong that occurred subsequently even though the insurer continued to accept payment of premiums).

Additionally, in breach of contract claims, New York courts apply the continuing wrong doctrine where a defendant's duty under the contract is ongoing. See, e.g., Bulova Watch Co. v. Celotex Corp., 46 N.Y.2d 606, 611 (1979); Beller v. William Penn Life Ins. Co. of N.Y., 8 A.D.3d 310, 314 (2d Dep't 2004).  The Plaintiffs have failed to identify any ongoing duty in the

representations and warranties that they allege the Defendants breached in order to justify the tolling of the statute of limitations for their breach of contract claims.[13]

### c. The Plaintiffs Failed to Plead Facts and Claims That Support Invoking and Expanding the Continuous Representation Doctrine

The Plaintiffs assert that if equitable estoppel does not bar the Defendants' statute of limitations defense and the continuing wrong doctrine does not apply to toll the limitations period, then this Court should expand the continuous representation doctrine—a toll unique to malpractice causes of action—to fit here. (Opp'n 21-22.)

With regards to malpractice claims, New York courts "appreciate[] the client's dilemma if required to sue the attorney while the latter's representation on the matter at issue is ongoing:  . . . . 'Since it is impossible to envision a situation where commencing a malpractice suit would not affect the professional relationship, the rule of continuous representation tolls the running of the Statute of Limitations

---

[13] Here, again, the Plaintiffs' additional (not pleaded) allegations that "SAS maintained that the [Orbis License] had been breached, had not been properly transferred to Orbis, was no longer valid, or did not include the '592 Patent," (Opp'n 19), if pleaded, would still fail to support application of the continuing wrong doctrine.  These allegations fail to identify any specific wrong that occurred as a result of these statements.  Thus, any wrong accrued at the time of contract execution. See Pike, 72 A.D.3d at 1048.

on the malpractice claim until the ongoing representation is completed.'" <u>Shumsky v. Eisenstein</u>, 96 N.Y.2d 164, 167-168 (2001) (quoting <u>Glamm v. Allen</u>, 57 N.Y.2d 87, 94 (1982)).

The Plaintiffs do not assert malpractice claims and allege no facts about any of the positions taken in the Ohio Action to suggest why expanding the doctrine beyond malpractice claims would be appropriate here.  More generally, the Plaintiffs misunderstand the purpose of the continuous representation doctrine.  In malpractice actions, "a client cannot reasonably be expected to assess the quality of the professional service while it is still in progress." <u>W. Vill. Assocs. Ltd. P'ship v. Balber Pickard Battistoni Maldonado & Ver Dan Tuin PC</u>, 49 A.D.3d 270, 270 (1st Dep't 2008).  The Plaintiffs do not assert that they failed to identify the claims against the Defendants because of their co-party status or because of their joint representation.[14]  Rather, the Plaintiffs merely assert that they "could not reasonably be expected to take a position adverse to SAS" while the Ohio Action was pending. (Opp'n 21.)  Presumably, the Plaintiffs believe this to be so merely because of their status as co-parties with SAS.  But the Federal Rules of Civil

---

[14]  Although not alleged in the FAC, the Plaintiffs state in their opposition brief that, in the Ohio Action, they both shared counsel with SAS and retained their own independent counsel. (Opp'n 21 & n.19.)

Procedure specifically contemplate that co-parties may also be adverse. <u>See</u> Fed. R. Civ. P. 13(g).[15]   Accordingly, the continuous representation doctrine cannot be applied to toll the statute of limitations for fraudulent inducement and breach of contract claims between arms-length business partners merely because of their status as co-plaintiffs.

### 4.   Unjust Enrichment

The Plaintiffs argue, in the alternative, that the Defendants are responsible for damages resulting from the Defendants' unjust enrichment. (FAC ¶¶ 78-84; Opp'n 24-25.)   The Defendants argue that this cause of action is time-barred and that it is duplicative of the Plaintiffs' breach of contract claims because there is no dispute that two valid express contracts exist. (Mem. 10-12.)   This Court finds that the Plaintiffs' unjust enrichment claim is barred by their expired fraudulent inducement and breach of contract claims and their surviving declaratory judgment claim.

In New York, an "[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists."

---

[15] The Court recognizes that crossclaims are permissive and, in light of the at-issue agreements' jurisdiction clauses, it was reasonable for the Plaintiffs not to bring crossclaims in the Southern District of Ohio.   It is equally reasonable, however, to expect the Plaintiffs to bring timely suit against the Defendants in a separate action consistent with these jurisdiction clauses.

<u>Fed. Treasury Enterprise Sojuzplodoimport v. Spirits Int'l N.V.</u>,
400 F. App'x 611, 613 (2010) (amended summary order).  The
Plaintiffs' unjust enrichment claim seeks restitution for two
injuries:  (1) the value of the contract (FAC ¶¶ 79, 84
(alleging that SAS retained the "amounts paid by Myers in
consideration for the Asset Purchase Agreement and the SAS/Myers
Patent License Agreement")) and (2) the costs, expenses, and
attorney's fees incurred in the Ohio Action (FAC ¶¶ 83-84
(alleging that SAS was unjustly enriched by the "amounts that
Buckhorn has paid and will continue to pay to defend the claims
of Orbis in connection with the [Orbis] License Agreement")).
As explained below, the costs, expenses, and attorney's fees
from the Ohio Action are also sought in the Plaintiffs'
surviving declaratory judgment action.  Similarly, the return of
the amounts paid as consideration for the asset purchase
agreement and patent license agreement is the same value-of-the-
contract remedy the Plaintiffs seek under their time-barred
fraudulent inducement and breach of contract claims.  While the
Plaintiffs are time-barred from bringing these claims at law,
"[a]n equitable claim cannot proceed where the plaintiff has had
and let pass an adequate alternative remedy at law." <u>See</u> <u>Spirits</u>
<u>Int'l N.V.</u>, 400 F. App'x at 614 (quoting <u>Norris v. Grosvenor</u>
<u>Mktg. Ltd.</u>, 803 F.2d 1281, 1287 (2d Cir. 1986), <u>superseded on</u>
<u>other grounds by rule</u>, Fed. R. Civ. P. 11, <u>as recognized in</u> <u>Ipcon</u>

26

Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 63 (2d
Cir. 2012)).  As a result, the Plaintiffs' unjust enrichment
claim is barred.

### 5.  Breach of Guaranty

The Plaintiffs fail to state a claim against SAS BV for
breach of guaranty because they have not alleged any underlying
debt.  A prima facie case for breach of a written guaranty in
New York requires a plaintiff to establish (1) an absolute and
unconditional guaranty, (2) the underlying debt, and (3) the
guarantor's failure to satisfy the unpaid debt. City of N.Y. v.
Clarose Cinema Corp., 256 A.D.2d 69, 71 (1st Dep't 1998).  On
July 2, 2015, the Federal Circuit concluded that the Plaintiffs
here were not liable to Orbis directly for its attorney's fees.
See Buckhorn Inc., 618 F. App'x at 1006-07.  The Plaintiffs
fraudulent inducement, breach of contract, and unjust enrichment
claims are each barred as explained above.  Accordingly, based
on the facts as alleged in the FAC, SAS does not owe a debt to
the Plaintiffs and SAS BV has not yet breached the guaranty.

### 6.  Declaratory Judgment

Finally, the Plaintiffs seek a declaratory judgment that
(1) they are not liable to any party for the fee awards issued
in the Ohio Action or for any other amounts or damages due to
Orbis; (2) SAS is obligated to indemnify the Plaintiffs under
the asset purchase agreement and/or the patent license agreement

27

for any and all amounts wrongfully incurred as a result of SAS's breaches and wrongful conduct; and (3) SAS BV is responsible under its guaranty in the asset purchase agreement for any amounts SAS does not pay. (FAC ¶¶ 88-91.)  The Defendants argue that the declaratory judgment cause of action is barred as duplicative of the breach of contract claim and barred by the statute of limitations. (Mem. 13-14.)  This Court finds that the declaratory judgment action is distinct and timely.

### a.  The Declaratory Judgment Standard

The Declaratory Judgment Act permits a district court to exercise jurisdiction over a proposed declaratory judgment action when an actual controversy exists. See 28 U.S.C. § 2201(a).  A district court has broad discretion when considering whether to exercise its jurisdiction under the Declaratory Judgment Act. Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003).

Thus, under the Declaratory Judgment Act, a district court must first determine whether an actual controversy exists and then decide whether it will exercise jurisdiction over that controversy.

### i.  An Actual Controversy Exists

An actual controversy is one where "the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of

28

sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Md. Cas. Co v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

The parties do not dispute that there is an actual controversy here; however, because this determination invokes the court's subject matter jurisdiction under Article III of the U.S. Constitution, it must be considered. FED. R. CIV. P. 12(h)(3); Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107 (2d Cir. 1997).  The Plaintiffs allege facts sufficient to suggest that the Plaintiffs and Defendants assert competing interpretations of the patent license agreement and asset purchase agreement that would result in opposite outcomes when determining the parties' ultimate liability for Orbis's attorney's fees and for the Plaintiffs' costs, expenses, and attorney's fees in the Ohio Action.  This is an actual controversy sufficient to invoke the court's subject matter jurisdiction and to require the court to consider whether to exercise its discretion under the second step.

### ii.  The Court Will Exercise Jurisdiction Over the Declaratory Judgment Action

If an actual controversy exists, the Court retains broad discretion to exercise jurisdiction over the declaratory

29

judgment action.  The Second Circuit instructs its district courts to consider the following factors in exercise of their discretion:  (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata;" (4) whether the use of declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy. See New York v. Solvent Chem. Co., 664 F.3d 22, 26 (2d Cir. 2011) (quoting Dow Jones & Co., 346 F.3d at 359-60).

When considering the first two factors—whether the judgment will serve a useful purpose in clarifying or settling legal issues involved and offer relief from uncertainty—this Court has previously declined to exercise jurisdiction over a declaratory judgment action that duplicates an available coercive action. See, e.g., Camofi Master LDC v. Coll. P'ship, Inc., 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006); Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 249-50 (S.D.N.Y. 2006).  The Defendants urge the Court to do the same here.  The Court declines to do so, however, because the Plaintiffs' declaratory

judgment cause of action is not duplicative of their fraudulent inducement or breach of contract claims.

In New York, duplicative claims arise from the same facts and allege the same damages. NetJets Aviation, Inc. v. LHC Commc'ns, LLC., 537 F.3d 168, 175 (2d Cir. 2008) (citing Sitar v. Sitar, 50 A.D.3d 667, 670 (2d Dep't 2008)).  "Where a claimant is entitled to a particular category of damages on one claim but not the other, the claims are not duplicative." Id.

On a valid fraudulent inducement claim, a plaintiff may recover its "out-of-pocket" damages:  the difference between the value of the bargain it was fraudulently induced to make and the value of the consideration exacted as the price of the bargain. Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (1996).  On a valid breach of contract claim, "damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2003).  New York measures contract damages by the value of the item at the time of the breach. Id.

Consequential damages—which could cover additional damages like the costs, expenses, and attorney's fees from the Ohio Action—are not ordinarily available and require additional proof to obtain. See Clearview Concrete Products Corp. v. S. Charles Gherardi, Inc., 88 A.D.2d 461, 468 (2d Dep't 1982) (holding that

31

consequential damages are available in fraudulent inducement
where the plaintiff can "demonstrate that its reliance on the
false representation resulted in expenditures which would not
otherwise have been incurred"); Kenford Co. v. Cty. of Erie, 73
N.Y.2d 312, 319 (1989) (holding that consequential damages in a
breach of contract action are "unusual or extraordinary damages"
and "must have been brought within the contemplation of the
parties as the probable result of a breach at the time of or
prior to contracting" (quoting Chapman v. Fargo, 223 N.Y. 32, 36
(1918)).

The portion of the Plaintiffs' declaratory judgment action
seeking costs, expenses, and attorney's fees from the Ohio
Action is a claim for contractual indemnity.  Recovery under an
indemnity provision is defined by the terms of that provision.
See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine
Host Corp., 418 F.3d 168, 179 (2d Cir. 2005) (holding that a
plaintiff's recovery was limited to losses and liabilities
provided for in the indemnity clause).  The indemnity provisions
at issue here provide for payment of "indirect or direct claims,
losses, damages, Liabilities, expenses or costs" "(including
reasonable attorneys' fees and expenses)." (FAC Ex. B art. I, at
4.)  Because the indemnity claim provides for recovery of
indirect injuries and attorney's fees, which are not ordinarily
included in fraudulent inducement and breach of contract claims,

as pleaded, the Plaintiffs' claim for contractual indemnification is not duplicative of either their fraudulent inducement or breach of contract claims. See NetJets, 537 F.3d at 175.

Similarly, the portion of the Plaintiffs' declaratory judgment action seeking a declaration of nonliability for Orbis's attorney's fees seeks distinct relief from the fraudulent inducement and breach of contract claims, because the damages recovered under either claim would not resolve the Plaintiffs' potential liability to SAS for Orbis's award in the Ohio Action.

Indeed, a declaratory judgment action in this matter would clarify the parties' legal obligations to one another and offer relief from uncertainty because it would determine the single issue that the Federal Circuit expressly declined to address in its July 2, 2015 opinion:  whether the Plaintiffs are liable to Defendants under the patent license agreement for Orbis's award of attorney's fees in the Ohio Action.  It would also clarify whether, under the asset purchase agreement or patent license agreement, the Defendants are liable for the Plaintiffs' own costs, expenses, and attorney's fees associated with the Ohio Action.

The remaining factors also favor this Court exercising discretion over a declaratory judgment action.

First, there is no suggestion that the Plaintiffs seek a
declaratory judgment as procedural gamesmanship or as a race to
res judicata.  The patent license agreement and asset purchase
agreement limit jurisdiction to New York state or federal courts
by their express terms. (See FAC Ex. B § 10.11; id. Ex. C
§ 7.12); Buckhorn Inc., 618 F. App'x at 1006 ("Under the express
terms of the [patent license] agreement, an Ohio court cannot
enforce the agreement.").  Moreover, there is no other action
currently pending to raise concerns that the Plaintiffs are
seeking to win the race to res judicata.  See generally Buckhorn
Inc., No. 3:08-cv-459 (terminated as of April 22, 2014).

Second, there is no risk of encroaching on the domain of
another court because the patent license agreement and asset
purchase agreement limit jurisdiction to New York state or
federal courts, and the Southern District of Ohio and Federal
Circuit have expressly declined to entertain the actions that
would provide the relief sought here.

Third, no better or more effective remedy exists here.  The
Plaintiffs could perhaps bring a coercive breach of contract
claim for the portion of the declaratory judgment action that
seeks indemnity for the Plaintiffs' own costs, expenses, and
attorney's fees from the Ohio Action, but dismissing on this
ground would exalt form over substance.  The Plaintiffs have
pleaded facts sufficient on motion to dismiss to reasonably

infer that SAS breached its alleged duty to indemnify. (See FAC
¶ 92 ("SAS has refused to honor its indemnification obligations
. . . .").)  Moreover, when the Plaintiffs filed this suit, the
Ohio Action was ongoing and the Plaintiffs presumably continued
to incur costs, expenses, and attorney's fees.  The Court will
not decline jurisdiction based on the Plaintiffs' election to
use one available procedural device instead of another. See City
of Rome, N.Y. v. Verizon Commc'ns, Inc., 362 F.3d 168, 174 n.3
(2d Cir. 2004) (observing that one purpose of the Declaratory
Judgment Act "is to furnish a less formidable alternative to
injunctive relief" and that "[t]he coercive action implicated by
a declaratory judgment suit will not, therefore, always be that
of the defendant, but may instead be that of the declaratory
judgment plaintiff.").

**b.  The Declaratory Judgment Cause of Action Is Timely**

"Because a declaratory judgment action is a procedural
device used to vindicate substantive rights, it is time-barred
only if relief on a direct claim based on such rights would also
be barred." Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir.
1992); accord Toledo Museum of Art v. Ullin, 477 F. Supp. 2d
802, 806 (N.D. Ohio 2006).  The Defendants assert that the
Plaintiffs' declaratory judgment cause of action arises from the
parties' contractual relationship and, therefore, it should be
governed by N.Y. C.P.L.R. § 213(2).  This is correct, but it

35

only resolves part of the issue.  Equally important to timeliness is when the claim accrued.

As noted above, the Plaintiffs seek two separate declarations.  First, they seek a declaration of nonliability to the Defendants under the patent license agreement for Orbis's attorney's fees.  Second, they seek affirmative relief that they are entitled to recover their own costs, expenses, and attorney's fees from the Ohio Action from the Defendants under the patent license agreement, the asset purchase agreement, or both.  As explained below, each declaration is timely.

### i.  The Plaintiffs' Cause of Action Seeking a Declaration of Nonliability for Orbis's Attorney's Fees Is Timely

The Plaintiffs' claim for a declaration of nonliability to the Defendants under the patent license agreement "is the negative of the claim or cause of action with respect to which the declaration is sought." Luckenbach S.S. Co. v. United States, 312 F.2d 545, 549 (2d Cir. 1963).  Therefore, "[f]or purposes of the statute of limitations non-liability is inextricably linked with the cause of action.  So long as the claim can be made, its negative can be asserted." Id.; accord Toledo Museum of Art, 477 F. Supp. 2d at 806.  The Plaintiffs' claim for nonliability here is the negative of the Defendants' claim for indemnification under section 3.03 of the patent license agreement.

36

In New York, a contractual indemnification claim is governed by N.Y. C.P.L.R. § 213(2)'s six-year statute of limitations.  An indemnification claim accrues only when the party seeking indemnification has made payment to the injured person. See McDermott v. City of N.Y., 50 N.Y.2d 211, 216 (1980).

In Ohio, a contractual indemnification claim is governed by OHIO REV. CODE § 2305.06's eight-year statute of limitations.  When "the contract provides indemnity against loss, the alleged indemnitor becomes liable and the cause of action accrues when the person seeking an indemnity suffers a loss." Firemen's Ins. Co. of Newark, N.J. v. Antol, 471 N.E.2d 831, 833 (Ohio Ct. App. 1984).

Under each state's law, the claims accrue at the same time.  Therefore, New York's shorter six-year statute of limitation applies.  While the date of the Defendants' payment is not alleged in the FAC, the Southern District of Ohio fixed the Defendants' liability to Orbis no earlier than April 22, 2014.  The Court can reasonably infer that, if payment has been made, it did not occur earlier than that date.  Therefore, the Plaintiffs cause of action seeking a declaration of nonliability to the Defendants under the patent license agreement for Orbis's attorney's fees in the Ohio Action is timely.

### ii. The Plaintiffs' Cause of Action Seeking a Declaration that the Defendants Are Responsible to the Plaintiffs for Costs, Expenses, and Attorney's Fees Associated with the Ohio Action Is Timely

The Plaintiffs' claim for a declaration that the Defendants must indemnify the Plaintiffs' for the Plaintiffs' own costs, expenses, and attorney's fees from the Ohio Action is contractual in nature and is, therefore, also governed by N.Y. C.P.L.R. § 213(2)'s shorter six-year statute of limitations. As noted above, an indemnity claim accrues when the indemnitee suffers a loss. The Plaintiffs first filed suit in the Ohio Action on December 12, 2008, less than six years prior to filing the complaint in the present action. Drawing all reasonable inferences in the Plaintiffs' favor, a declaratory judgment ruling that the Defendants must indemnify the Plaintiffs for the Plaintiffs' own costs, expenses, and attorney's fees from the Ohio Action, would permit recovery at least as far back as the date that the Plaintiffs first initiated the Ohio Action.

### Conclusion

For the foregoing reasons, the Defendants' motion to dismiss the Plaintiffs' FAC is GRANTED as to the Plaintiffs' causes of action for fraudulent inducement, breach of the patent license agreement, breach of the asset purchase agreement, breach of guaranty, and unjust enrichment. The Defendants'

38

motion to dismiss is DENIED as to the Plaintiffs' cause of action for declaratory judgment.

Ordinarily, dismissal under Federal Rule of Civil Procedure 12(b) is without prejudice.  The Court finds, however, that amendment of the fraudulent inducement, breach of the patent license agreement, and breach of the asset purchase agreement claims would be futile because these claims are time-barred. The Court also finds that amendment of the unjust enrichment and breach of guaranty claims would be futile because these claims are substantively defective.  Accordingly, these causes of action are DISMISSED WITH PREJUDICE. See Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 92 (2d Cir. 2003); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

Counsel are directed to appear in Courtroom 20-C on Thursday, April 21, 2016, at 11:15 a.m. for a conference to discuss the case management plan and scheduling order and specifically, whether the Court should order a speedy hearing of the declaratory judgment action in accordance with Federal Rule of Civil Procedure 57.

SO ORDERED.

Dated:    New York, New York
          March 2 1, 2016

                                    _____
                                    John F. Keenan
                                    United States District Judge